UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| WILLIAM CASSEL, on behalf of himself and all others similarly situated, | ) ) ) | Case No. 11-cv-7045 |
| Plaintiff, | ) ) | |
| vs. | ) ) | |
| ADOLOR CORPORATION, *et al.* | ) ) ) | |
| Defendants. | ) ) | |

**PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF EMERGENCY MOTION FOR EXPEDITED DISCOVERY, EXPEDITED PROCEEDINGS, AND A BRIEFING SCHEDULE ON PLAINTIFF'S MOTION FOR A PRELIMINARY INJUNCTION**

Plaintiff William Cassel ("Plaintiff"), individually and on behalf of all others similarly situated, respectfully submits the following brief in support of his emergency motion for expedited discovery, expedited proceedings, and a briefing schedule on Plaintiff's motion for a preliminary injunction as follows:

**I.     INTRODUCTION**

This is a shareholder action brought by Plaintiff on behalf of the public holders of Adolor Corporation ("Adolor" or the "Company") common stock against Adolor, the Company's Board of Directors (the "Board"), and Cubist Pharmaceuticals, Inc. ("Cubist"), arising out of the proposed acquisition of Adolor by Cubist via an unfair process that yielded an unfair price (the "Proposed Transaction").  In addition to the tender price being inadequate, Defendants have omitted material information in their SEC filings that require disclosure prior to the expiration of the tender offer on December 9, 2011.  As such, the shareholders do not have material

information in order to make a fully informed decision on whether to tender their shares.  Due to

the imminent expiration of the tender offer, expedited proceedings are required in the form of the

limited documents and depositions requested, all which are easy to produce in an expeditious

manner without great expenditure or prejudice to the Defendants.  In addition, a briefing

schedule should be set for Plaintiff's intended preliminary injunction proceeding.

## II.      FACTUAL AND PROECDURAL BACKGROUND

On October 24, 2011, Adolor announced that it had entered into a definitive merger

agreement (the "Merger Agreement")[1] to be acquired by Cubist.  Smith Decl. at ¶ 2.  Pursuant to

the terms of the Merger Agreement, Cubist will commence a tender offer to acquire all of the

outstanding shares of Adolor for an initial payment of $4.25 per share in cash (the "Up-front

Payment").  *Id.*  In addition to the Up-Front Payment, Adolor shareholders will receive one, non-

transferable Contingent Payment Right ("CPR") (together with the Up-Front Payment, the

"Merger Consideration").  *Id.*  The CPR will entitle the holder to receive an additional cash

payment of up to $4.50 for each share of Adolor they own if certain regulatory approvals and/or

commercialization milestones for ADL59452 are achieved.  *Id.*  The total transaction is valued at

up to $415 million – a price Plaintiff also alleges is woefully inadequate.  *Id.*

To make matters worse, Defendants are depriving Adolor shareholders of all material

information they will need in order to make informed decisions about whether to tender their

shares in favor of the Proposed Transaction.  On November 7, 2011, Defendants filed a

---

[1] A true and correct copy of the Merger Agreement is attached to the Declaration of Evan J. Smith, Esquire in Support of Motion For Expedited Proceedings (hereinafter "Smith Decl.") as Exhibit "A."

[2] ADL5945 is a promising compound that is currently involved in late-stage clinical trials.  ADL5945, which Adolor acquired September 6, 2011, will be used in the treatment of opioid-induced constipation, a growing, multi-billion dollar, currently underserved market.

Solicitation and Recommendation Statement on a Schedule 14D-9 ("14D-9").[3] *Id.* at ¶ 3.  The purpose of the 14D-9 is to provide Adolor shareholders with sufficient material information about the process leading up to the Proposed Transaction and the financial metrics the Board's financial advisor, Stifel, Nicholas & Company ("Stifel Nicholas"), used in issuing its fairness opinion.  On November 10, 2011, Plaintiff filed the instant Complaint alleging that the 14D-9 falls far short from providing sufficient material information to shareholders, in violation of federal law, and thus, deprives the shareholders of the ability to make an informed, intelligent and rational decisions about whether to tender their shares.  *Id.* at ¶ 4.

Among other things, the 14D-9 neglects to provide sufficient details as evidenced by the following:

| MATERIAL OMISSIONS / MISLEADING DISCLOSURES | CORRESPONDING TEXT FROM THE 14D-9 |
| --- | --- |
| **ITEM #1:** 14D-9 at p. 12   Defendants must indicate when each confidentiality agreement was signed, and the nature of the related discussions in each case (i.e.., merger, licensing agreement, etc.) | "Over the course of the last year, confidentiality agreements have been signed with eleven companies interested in Adolor's OIC program." |
| **ITEM #2**:  14D-9 at p. 12   Defendants must indicate the nature of the discussion with respect to beloxepin | "As part of these routine outreach efforts, on March 30, 2011, employees of the Company, including Kevin Taylor, the Company's Vice President Business Development, met with employees of Parent to discuss beloxepin." |
| **ITEM #3:**   14D-9 at p. 12 Adolor appears to have negotiated with Cubist for months, executed a confidentiality agreement and provided access to confidential information, all without apprising the board of directors. If the board was made aware of the progression of the discussions | "Following [a mid-July] discussion [between Messrs. Dougherty and Bonney], the companies negotiated a confidentiality agreement which was executed on July 26." "It was agreed that Parent would be granted access to the Company's electronic data room, where the Company housed |

---

[3] A true and correct copy of the 14D-9 is attached to Smith Decl. at Exhibit "B."

between the companies prior to the 8/24/11special meeting, the 14D-9 must indicate so

**ITEM #4:**  14D-9 at p. 13 Defendants must discuss the Stifel retention, including the vetting process, who suggested Stifel, how many other banks were considered, and discussions with respect to potential conflicts of interest.

**ITEM #5:** 14D-9 at p. 13  Defendants must disclose: How Adolor's discussions with other potential acquirers come to Mr. Bonney's attention? Why would Mr. Bonney have had any expectation of exclusive negotiations? Defendants must disclose in detail the discussions between Adolor and any other parties with respect to any potential acquisition and/or collaboration.

**ITEM #6:**  14D-9 at p. 13  Defendants must explain the "outreach effort" in detail.

**ITEM #7:**  14D-9 at p. 13  Defendants must discuss these "outreach efforts" and indicate how they differed from the outreach efforts already undertaken. How were the 10 companies selected? Did they differ from the companies already contacted by Adolor?

**ITEM #8:**  14D-9 at p. 13   Defendants must clarify whether this was in addition to a CPR.

**ITEM #9:** 14D-9 at p. 14  Defendants must disclose the capacity of the committee to "advise" management? What was the purpose of "communicating" with management, if not to act on behalf of the

confidential information, and on August 12, the Company provided Parent access."

"[On 8/24/11, Adolor's] board also approved the appointment of Stifel, Nicolaus & Company, Incorporated (" Stifel Nicolaus ") to serve as financial advisor to the Company."

"On August 31, Mr. Bonney called Mr. Dougherty to discuss the Company's strategy. Mr. Bonney expressed concern that the Company was engaging in discussions with other potential acquirers and collaborators."

"The Company Board authorized management to intensify its ongoing outreach efforts and authorized Stifel Nicolaus to participate in discussions with other potential acquirers and strategic partners."

"Following [a] September 8 [board] meeting, it was determined that outreach efforts would be undertaken by Stifel Nicolaus (in some cases with assistance from Company management) with 10 companies to gauge interest in a potential transaction with the Company."

"[On 9/9/11] Mr. Dougherty indicated that the Company was seeking up-front cash consideration of $5.50 per share."

"[On 9/16/11]… the Company Board authorized the formation of a committee (the "Committee") to communicate with and
advise management on the negotiations

board at large? Why were these three
directors appointed to the committee?

with Parent, as needed. The Committee was
not delegated the authority to act on behalf
of the Company Board. The three members
of the Committee were: David Madden,
Armando Anido and George V. Hager, Jr."

**ITEM #10:**  14D-9 at p. 14  Defendants
must indicate the terms of Mr. Dougherty's
counteroffer. Does this refer to Cubist's
second offer letter, dated 9/13/11 (which
the board had already discussed on
9/16/11) or to the discussions between
Messrs. Dougherty and Bonney on 9/16/11
and 9/18/11? If the former, why was the
update necessary? If the latter, what had
changed to necessitate an update?

"The Company Board received an update
on Mr. Dougherty's proposed counteroffer
to Parent."

**ITEM #11:** 14D-9 at p. 15  Defendants
must specify the terms discussed by Mr.
Dougherty and Mr. Bonney on September
29.

"On September 30, Parent sent the
Company a third offer letter, with revised
terms generally reflecting the terms
discussed by Mr. Dougherty and Mr.
Bonney on September 29."

**ITEM #12:**  14D-9 at p. 15 Defendants
must specify the terms set forth in Adolor's
counterproposal.

"The Company sent revised letters to Parent
on October 3 reflecting its counterproposal
on the terms of the proposed acquisition of
the Company by Parent and the exclusivity
period."

**ITEM #13:**  14D-9 at p. 16  Defendants
must provide the details of the indication
of interest.

"With respect to ENTEREG, the Company
Board noted [during its 10/3/11 special
meeting] that a non-binding verbal
indication of interest had been received."

**ITEM #14:**  14D-9 at p. 22  Defendants
must disclose whether these drafts
substantially similar to the final forms.

"Stifel Nicolaus also assumed that the final
forms of the Merger Agreement and the
CPR Agreement will be substantially
similar to the last drafts reviewed by it."

**ITEM #15:**  14D-9 at p. 24  No
information is disclosed with respect to
observed market pricing multiples, only
Stifel's selected range.

"The following table sets forth, for the
periods indicated, the ranges of enterprise
value as a multiple of revenue utilized by
Stifel Nicolaus in performing its analysis,
which were derived from the selected
publicly traded, mid- and small-cap
specialty pharmaceutical companies

identified above…"

**ITEM #16:** 14D-9 at p. 24  Defendants must indicate whether Stifel's Selected Companies Analysis reflects the present value of Adolor's NOL carryforwards. If not, Defendants must explain why not.

*N/A*

**ITEM #17:** 14D-9 at pp. 24-25 Defendants must discuss the source of the 20% discount rate assumption. Does this reflect Adolor's cost of equity? Was the CAPM or some other model used to determine the discount rate? Discuss, and provide details regarding the underlying assumptions (e.g., beta coefficient, market risk premium, risk-free rate, etc.). Why does this rate differ so materially from the WACC of 13%-15% used in the Sum-of-the-Parts analysis (see p. 27)?

"The implied P/E ratio ranges were utilized to calculate Adolor's equity values implied by Adolor's 2017 and 2018 estimated net income in both the Competitive Label Case and Non-Competitive Label Case, as provided by Adolor management, and were discounted to present value at a 20% discount rate to arrive at an implied equity value per share."

**ITEM #18:** 14D-9 at p. 25  No information is disclosed with respect to observed market pricing multiples, only Stifel's selected range.

"The following table sets forth, for the periods indicated, the ranges of P/E multiples utilized by Stifel Nicolaus in performing its analysis, which were derived from the selected publicly traded, mature, specialty pharmaceutical companies identified above…"

**ITEM #19:** 14D-9 at p. 25  No information is disclosed with respect to observed market pricing multiples, only Stifel's selected range

"The following table sets forth, for the periods indicated, the ranges of revenue multiples utilized by Stifel Nicolaus in performing its analysis, which were derived from the selected life sciences business combinations identified above…"

**ITEM #20:** 14D-9 at p. 26  Defendants must indicate whether Stifel's Selected Precedent Transactions Analysis reflects the present value of Adolor's NOL carryforwards. If not, must explain why not.

*N/A*

**ITEM #21:** 14D-9 at p. 27  Defendants must disclosed whether there is a typographical error that should have read "For this analysis…" since this analysis would not produce as outputs indications

"From [the DCF] analysis, Stifel Nicolaus selected a range of discount rates from 18% to 22% and terminal growth rates from (20%) to (10%) for its valuation reference range."

of discount rates or terminal growth rates.

| | |
|---|---|
| **ITEM #22:** 14D-9 at p. 27  Defendants must disclose and discuss the assumptions underlying the calculations pertaining to weighted-average cost of capital, including the "approval adjustment." Was this adjustment based on objective evidence (if so, what evidence?) or subjective judgment (if so, whose judgment?)? | "The discount rates were selected based on a weighted-average cost of capital analysis for the selected, publicly traded, mid- and small-cap specialty pharmaceutical companies and publicly traded, mature, specialty companies and Stifel Nicolaus estimates, adjusted to appropriately capture the approval risk of ADL5945." |
| **ITEM #23:** 14D-9 at p. 27  Defendants must indicate whether Stifel's DCF Analysis reflects the present value of Adolor's NOL carryforwards. If not, Defendants must explain why not. | _**N/A**_ |
| **ITEM #24:** 14D-9 at p. 27  Defendants must distinguish each of these cash flow streams in the projections on p. 30. | "Stifel Nicolaus performed a sum-of-theparts valuation by aggregating the values of Adolor's currently marketed product, ENTEREG, its late-stage clinical program, ADL5945, corporate overhead, and tax savings associated with net operating losses in order to derive a range of implied equity values per share for Adolor." |
| **ITEM #25:** 14D-9 at p. 27  Defendants must indicate the source of the probability assumptions. Was this probability adjustment based on objective evidence (if so, what evidence?) or subjective judgment (if so, whose judgment?)? | "For this analysis, Stifel Nicolaus selected a range of… sensitivity to probability of success ranging from 55% to 75% for its valuation reference range." |
| **ITEM #26:** 14D-9 at p. 31  Defendants must indicate all work done for Adolor or Cubist in the past two years, as well as fees for such services. | _**N/A**_ |

_See_ Plaintiff's Complaint at ¶¶ 50-53.

### III.    LEGAL ARGUMENT

### A.    Expedited Proceedings Are Necessary to Allow Plaintiff Access to Courts, Given the Fast-Paced Nature of this Case

Due to the very fluid and fast-moving nature of Defendants' attempts to consummate the proposed merger with Cubist, including the likelihood that Company shareholders will not have material information sufficient to enable them to decide whether to tender or seek appraisal of their shares prior to the December 6, 2011 close of the tender offer, Plaintiff requests that this Court grant expedited discovery, schedule a prompt hearing on the preliminary injunction motion, and further requests that a briefing schedule be entered to permit the parties to submit memoranda of law and evidence in connection with the preliminary injunction motion.   Indeed, expedited discovery has been granted in similar tender offers in this jurisdiction.  *See e.g. In re American Sterilizer Shareholder Litigation*, 1985 WL 4027 (not reported); *Ronson Corp. v. Liquifin Aktiengesellschaft*, 483 F.2d 846 (3rd Cir. 1973) (trial Court ordered expedited proceedings and discovery and ultimately issued an injunction with the benefit of a full record including thousands of pages of documents - Third Circuit Court of Appeals affirmed).  *See also Piper v. Chris-Craft Industries, Inc.* 430 U.S. 1, 97 S.Ct. 926 (1977) (practical concern[s] appl[y] with even greater force to tender offers which are processed on a highly expedited schedule).

This procedure – the setting of a firm date for an injunction hearing from which the parties can establish a briefing and discovery schedule – eliminates a "last minute" scramble to schedule an "emergency" hearing, and is precisely the process regularly utilized in the Delaware

Court of Chancery where many similar breach of fiduciary duty cases involving buyout transactions are decided.[4]

For example, in a lawsuit filed in Delaware challenging a proposed buyout of the outstanding shares of Caremark Rx, Inc., Chancellor William B. Chandler III set a hearing date for a not-yet-filed but anticipated motion for preliminary injunction to block the consummation of the allegedly unfair transaction, holding that:

> [A]ll I'm being asked to do today is decide whether or not there are reasonable grounds to believe that this case should at least go forward into some discovery and perhaps, ultimately, lead to a preliminary injunction hearing. And I think there is no question that that should occur, that there is a reasonable basis to believe that a preliminary injunction hearing should be scheduled.
>
> First, and fundamentally, the deal and all of the terms of the deal, are fixed. It's a little hard to argue that this case somehow isn't ripe for decision, or somehow isn't ready to be decided, because all the merger terms are determined, fixed and set. So regardless of the board's treatment of, or response to, the Express Scripts proposal, the board has recommended to shareholders, and is encouraging them to support, a merger whose terms and provisions are defined.
>
> The complaint challenges those terms and provision of the merger on classic grounds – under *Revlon*, under *Unocal*, and on disclosure bases. In fact, I think for precisely 20 years this Court has been hearing this very kind of claim, that a merger or its terms contravene principles of our law under *Revlon* or under *Unocal*, or one of their progeny. And here, I have scheduled just about every one of these matters for preliminary injunction hearing. If one looks back over those 17 years that I have been on this Court, I think you might find two or three cases where I refused expedited relief. But those are the unusual cases.
>
> More typically, this Court does schedule and does accommodate plaintiffs, and does schedule expedited proceedings in cases of this kind where there is an attack or challenge on a merger agreement . . . .

* * *

---

[4]   Although Adolor has a principal place of business in Pennsylvania, because Adolor is incorporated in Delaware, substantive Delaware law applies. *See, e.g.*, *In re Estate of Hall*, 731 A.2d 617, 622 (Pa. Super. Ct. 1999) ("[S]ince the record reveals that Biddle was incorporated in Delaware, Delaware law applies.").

My thought is that we turn our attention to our calendars and when we might schedule this.  My first choice of dates for a preliminary injunction hearing, and from that you can all work backward with respect to the discovery schedule and the briefing schedule . . . .

*See* Transcript of Argument and Ruling on Motion to Expedite at 39-40, 44, *La. Municipal Police Employees' Ret. Sys. v. Crawford, et al.*, Civil Action No. 2635-N (Del. Ch. Dec. 29, 2006); *see also Morton v. Am. Mktg Indus. Hldgs.*, C.A. No. 14550, 1995 Del. Ch. LEXIS 162, at *9, 10 (Oct. 5, 1995) (holding that if the Court "cannot say with confidence that plaintiff has not alleged . . . a colorable claim of violation of the fiduciary duty of disclosure," then "a preliminary injunction hearing should be scheduled.").

Likewise, the Delaware Chancery Court has held that:

[T]he granting of [an expedited discovery motion] is quite conventional in litigation of this type for very good reason[s]. Cases involving contests for corporate control are of necessity very fast-moving.  Unlike the classic model of litigation which those who formulated the rules no doubt had in mind, (*i.e.*, a constellation of fixed, historical facts upon which a claim is based), takeover cases are fluid, constantly changing affairs, or almost so. In some instances, the underlying subject matter of the suit – control of the corporation – may itself be fully resolved before the time of taking depositions under [Chancery Court] Rule 30 may have arrived. Even in this context, plaintiff must show some reason justifying departure from the sequence envisioned by the rules, but in this context such a showing will be easier to make.

The presence of a transaction of some sort, a shareholders meeting, the closing of a tender offer or the closing of some structural transaction (a recapitalization, sale of substantial assets, etc.), is typically the reason in such cases to permit expedited discovery. Here I am satisfied that there is legitimate need for expedited discovery and will therefore order that plaintiff may institute any discovery now contemplated by our rules.

*Am. Stores Co. v. Lucky Stores, Inc.*, C.A. No. 9766, 1988 WL 909330, at *2 (Del. Ch. Apr. 13, 1998).

In this regard, in Delaware "[a] party's request to schedule an application for a preliminary injunction, and to expedite the discovery related thereto, is normally routinely

granted. Exceptions to that norm are rare." *In re Int'l Jensen Inc. S'holder Litig.*, C.A. No.

14992, 1996 WL 422345, at *1 (Del. Ch. July 13, 1996).  As the Delaware Supreme Court has

observed, "Delaware courts are always receptive to expediting any type of litigation in the

interests of affording justice to the parties." *Box v. Box*, 697 A.2d 395, 399 (Del. 1997).

Expedited discovery is thus critical in cases such as this, and should be granted.

   **B.    Plaintiff seeks limited and Specific Expedited Discovery, and a Briefing
          Schedule**

   Plaintiff seeks the following discovery on an expedited basis and to be produced within

three days of the date of the Order:

   **Documents**

   The meeting minutes, including drafts of minutes and any handwritten notes taken at the

meetings, with attachments and materials reviewed at the meetings, of the Company's Board of

Directors and all committees thereof, insofar as the materials relate to the proposed merger with

Cubist (or any other offer, merger or strategic transaction involving Adolor and/or a shareholder

of Adolor), including employment agreements, stockholder agreements, voting agreements,

stock options, materials regarding strategic alternatives, and drafts of merger agreements;

   All materials given to, or received from, the Company's financial advisor relating to the

proposed merger with Cubist or the potential acquisition of, or business combination with, any

other possible acquirer of Adolor and/or shareholder of Adolor, including, but not limited to

projections of the Company's future financial performance, and valuation of the Company's

assets;

   Monthly and quarterly executive and/or director packages, or any other document

containing Adolor's historical and projected operations and financial performance, and valuation

of the Company's assets;

All communications between Defendants, Defendants' financial advisor, Cubist, and/or any other entity expressing interest in acquiring Adolor, and all communications to or from Defendants, concerning any potential acquisition of Adolor or business combination with Cubist or any other entity; and

All documents and/or agreements demonstrating current and anticipated affiliations and arrangements between Adolor, the Director Defendants, and Cubist, including any voting agreements, shareholder agreements, partnership agreements, licensing agreements, collaboration agreements, confidentiality agreements, common board memberships, common memberships in any business organization and/or any employment agreements.

**<u>Depositions</u>**

Plaintiff also seeks the following depositions within five days after the production of documents:

> Michael R. Dougherty;
>
> David Madden;
>
> Armando Anido;
>
> A person most knowledgeable of the transaction from Stifel Nicholas; and
>
> The person most knowledgeable at Cubist regarding the proposed merger.

**<u>Briefing Schedule</u>**

Plaintiffs seek the following briefing schedule on the motion for a preliminary injunction:

> Plaintiff's initial brief due December 2, 2011
>
> Defendants' response brief due December 4, 2011 at noon; and

**Hearing Date**

Plaintiff seeks a hearing date on the motion for a preliminary injunction before December

6, 2011.  Plaintiff is willing to have a hearing on any date necessary for the convenience of the

Court.

## IV.    CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court enter an Order:

A.    Granting this motion;

B.    Requiring Defendants to produce the documents outlined above;

C.    Requiring Defendants to produce for deposition the deponents outlined above;

D.    Setting Plaintiff's motion for preliminary injunction for hearing at the earliest

practicable time;

E.    Setting a briefing schedule for the parties to submit memoranda of law in

connection with the motion for preliminary injunction; and

Granting such other and further relief as the Court deems just and proper.

Dated: November 15, 2011                BRODSKY & SMITH, LLC


By:*s/ Evan J. Smith, Esquire*
Evan J. Smith, Esquire
Marc L. Ackerman, Esquire
Two Bala Plaza, Suite 602
Bala Cynwyd, PA 19004
(610) 667-6200
(610) 667-9029 (fax)

*Attorneys for Plaintiff*